**Fouad Yacoub RAFEEDIE, Plaintiff,**

v.

**IMMIGRATION AND NATU-
RALIZATION SERVICE,
et al., Defendants.**

**Civ. A. No. 88–0366 (JHG).**

United States District Court,
District of Columbia.

May 28, 1992.

14

William W. Taylor, III, Kerry W. Kircher, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., David Cole, Center for Constitutional Rights, New York City, Michael Maggio, James R. Fennerty, Nat. Lawyers Guild, Chicago, Ill., Marc Van Der Hout, Law Offices of Marc Van Der Hout, San Francisco, Cal., for plaintiff.

Michael P. Lindemann, James A. Hunolt, Office of Immigration Litigation, U.S. Dept. of Justice, William P. Joyce, Associate Gen. Counsel, I.N.S., Washington, D.C., for defendants.

MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Every Judge who has examined this case agrees that "the government's basic position" is "profoundly troubling."[1] Plaintiff Fouad Yacoub Rafeedie ("Rafeedie"), a permanent resident alien who has resided in the United States since 1975, challenges the decision of the Immigration and Naturalization Service ("INS") to conduct summary exclusion proceedings against him under Section 235(c) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1225(c).[2] The INS has invoked the summary procedure on the basis of confidential information, which, according to the defendants, indicates that plaintiff is a high-ranking member of the Popular Front for the Liberation of Palestine ("PFLP").

The matter comes now before the Court on defendants' motion for judgment on the pleadings and plaintiff's renewed motion for partial summary judgment. For the following reasons, defendants' motion is granted in part and denied in part, and plaintiff's motion is granted in part and denied in part.

## I. STATUTORY SCHEME

The Immigration and Nationality Act, which operated to exclude plaintiff, provides that upon entry, or reentry, into the United States "[e]very alien ... who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land" is detained for further inquiry. 8 U.S.C. § 1225(b). If, upon investigation, the INS determines that the alien is excludable, the agency may initiate exclusion proceedings against that individual. Such proceedings may take one of two forms: plenary proceedings under § 236 of the Act, 8 U.S.C. § 1226, or summary proceedings under § 235(c), 8 U.S.C. § 1225(c).

Plenary exclusion proceedings are conducted before an Immigration Judge ("IJ"), a Justice Department officer who is independent of the INS. In such proceedings, an alien has the right to be represented by counsel and must be so apprised. 8 C.F.R. § 236.2(a). Moreover, the proceedings are on the record, and upon the alien's election, may be open to the public and the press. *Id.* In addition, the alien has the opportunity to present evidence and cross examine witnesses. 8 U.S.C. § 1226; 8 C.F.R. § 236.2(a). If the alien is a permanent resident, as is the plaintiff, the burden is on the INS to establish his or her excludability. *Kwong Hai Chew v. Rogers*, 257 F.2d 606, 606 (D.C.Cir.1958). Finally, any decision to exclude the alien is appealable to the Board of Immigration Appeals. 8 C.F.R. §§ 236.7, 3.36(a), 3.1(b).

In contrast, summary proceedings under § 235(c) may be used only against an alien who appears to be excludable under certain enumerated sections of the Act.[3] In the instant case, the following provisions were invoked against plaintiff: "Aliens who the consular officer or the Attorney General knows or has reason to believe seek to enter the United States solely, principally, or incidentally to engage in activities which would be prejudicial to the public interest, or endanger the welfare, safety, or security of the United States"; "[a]liens who advo-

---

1. *Rafeedie v. Immigration and Naturalization Serv.*, 880 F.2d 506, 530–31 (D.C.Cir.1989) (Silberman, J. dissenting) (*"Rafeedie II"*).

2. After this action was initiated and substantially litigated, President Bush signed the Immigration Act of 1990, Pub.L. No. 101–649. Title VI of the Act revises the grounds for exclusion and deportation of aliens. The new law, however, does not appear to affect this case. First, the amendments apply to individuals entering the United States on or after June 1, 1991. *See* Pub.L. 101–649, Section 601(e). Because plaintiff sought entry prior to that date, the substantive amendments do not affect the exclusion charges pending against him. In any event,

§ 1225(c) remains virtually unchanged, except for a conforming amendment. Unless otherwise indicated, therefore, references to the Act are to those provisions in effect when Rafeedie sought reentry into the United States.

3. Section 1225(c) of Title 8 of the United States Code provides, "Any alien ... who may appear to the examining immigration officer or to the special inquiry officer during the examination before either of such officers to be excludable under paragraphs (27), (28), or (29) of section 1182(a) of this title shall be temporarily excluded."

cate or teach or who are members of or affiliated with any organization that advocates or teaches ... (ii) the duty, necessity, or propriety of the unlawful assaulting or killing of any officer or officers (either of specific individuals or of officers generally) of the Government of the United States or of any other organized government, because of his or their official character; or (iii) the unlawful damage, injury, or destruction of property; or (iv) sabotage"; and "[a]liens with respect to whom the consular officer or the Attorney General knows or has reasonable ground to believe probably would, after entry, (A) engage in activities which would be prohibited by the laws of the United States relating to espionage, sabotage, public disorder, or in other activity subversive to the national security, (B) engage in any activity a purpose of which is the overthrow of the Government of the United States by force, violence, or other unconstitutional means, or (C) join, affiliate with, or participate in the activities of any organization which is registered or required to be registered under section 786 of Title 50." 8 U.S.C. §§ 1182(a)(27), (a)(28)(F), (a)(29).[4]

In the case of a summary exclusion proceeding, the examining immigration officer at the port of arrival "if possible, take[s] a brief sworn question-and-answer statement from the alien," advises the individual of his or her "right to make written representations," and reports the case to the appropriate INS District Director. 8 C.F.R. § 235.8(a). The District Director then forwards the case to the Regional Commissioner, who considers it together with the written statement and "accompanying information, if any, as the alien or his representative may desire to submit...." 8 U.S.C. § 1225(c). The permanent resident alien is entitled to neither a hearing nor an opportunity to confront the evidence. Moreover, if the information supporting

the exclusion is "of a confidential nature the disclosure of which would be prejudicial to the public interest, safety, or security," it need not be disclosed to the resident, 8 C.F.R. § 235.8(b), and the Regional Director may summarily exclude him or her and order deportation. If the decision of the Regional Commissioner contains confidential information, then no more than a "separate order showing only the ultimate disposition of [the alien's] case" need be served. 8 C.F.R. § 235.8(c). Unlike proceedings under § 236, there is no appeal. *Id.*

## II. FACTUAL BACKGROUND

The facts giving rise to this case have been set out in two previous opinions of both this Court and the Court of Appeals,[5] and thus need not be recounted in full here. Nevertheless, a brief recitation of the procedural history of this case is useful to an understanding of the issues presently before the Court.

Rafeedie was born in Jordan in 1957 and came to the United States in 1975 on an immigrant visa. He has been a lawful permanent resident of the United States since arriving here. In April 1986, he applied for and received from the INS a permit to travel outside the United States. He stated on his application that he wished to travel to Cyprus because his mother was having major heart surgery there. After receiving his reentry permit, however, he allegedly travelled to Syria rather than to Cyprus, and purportedly attended a meeting of a group closely associated with the Popular Front for the Liberation of Palestine ("PFLP"). Just two weeks after receiving his permit, on April 30, 1986, Rafeedie applied for re-admission to the United States at the port of entry in New York City, and was paroled to his home in Cleveland, Ohio pending a decision on that application.[6] In March, 1987, the INS District

---

**4.** The INS subsequently abandoned its claim that Rafeedie was excludable under 8 U.S.C. § 1182(a)(29).

**5.** *See Rafeedie v. Immigration and Naturalization Serv.,* 688 F.Supp. 729, 731–36 (D.D.C.1988) (*"Rafeedie I"*), *aff'd in part, rev'd in part,* 880 F.2d 506, 508–09 (D.C.Cir.1989).

**6.** According to defendants' latest pleading, "We are advised, however, that plaintiff has moved to Houston, Texas." Defendants' Memorandum in Response to the Court's April 8, [1992] Order ("Defs. Memo."), at 3.

Office in Cleveland initiated "ordinary" exclusion proceedings against Rafeedie, pursuant to 8 U.S.C. § 1226. On December 31, 1987, the INS moved the immigration court to terminate those proceedings and instituted summary exclusion proceedings under 8 U.S.C. § 1225(c). The motion to terminate the ordinary proceedings was granted in January, 1988.

### III. PROCEDURAL HISTORY

On February 12, 1988, Rafeedie sued to interrupt and preclude the administrative proceedings. On June 15, 1988, the Court issued an Order, denying the government's motion to dismiss, granting Rafeedie's motion for a preliminary injunction against both summary and ordinary exclusion proceedings, and denying plaintiff's motion for partial summary judgment as to some of his claims. The Court, inter alia, rejected the government's jurisdictional argument that before Rafeedie could bring any of his constitutional challenges, he was required to exhaust administrative remedies under 8 U.S.C. § 1105a(c) and found factual disputes as to whether Rafeedie had committed nefarious acts abroad that would divest him of the due process rights normally accruing to a returning permanent resident, whether the INS was seeking to exclude Rafeedie for conduct protected by the First Amendment, and whether Rafeedie was seeking admission in order to engage in terrorist activity that would disqualify him from relief under section 901(a) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989, Pub.L. No. 100–204 ("FRAA").

The government appealed the preliminary injunction to the United States Court of Appeals for the District of Columbia Circuit, principally challenging the Court's refusal to require exhaustion. Rafeedie obtained leave to cross appeal the holding below that his right to due process depended upon whether his foreign trip was taken for a nefarious purpose. This Court stayed the instant action pending further resolution of the issues on appeal.

On July 21, 1989, the Court of Appeals affirmed the injunction against summary exclusion proceedings under section 1225(c), reversed the injunction against ordinary proceedings under 8 U.S.C. § 1226, and reversed the holding that Rafeedie may not have a right to due process. Specifically, the panel majority narrowly held that under the unusual circumstances of this case, the statutory exhaustion requirement in 8 U.S.C. § 1105a(c) does not apply. With respect to Rafeedie's cross appeal, the panel endorsed this Court's holding that section 1225(c) applies to Rafeedie as a matter of statutory construction but found that Rafeedie was entitled to partial summary judgment on the question whether the Fifth Amendment guarantees him due process in his exclusion proceedings; the panel found that "the degree of nefariousness of the alien's trip was irrelevant to the due process inquiry[, and] for that purpose, the only relevant question was whether the alien had been gone so long as to lose her permanent resident status." Rafeedie II, 880 F.2d at 522. However, the Court of Appeals expressly declined to grant Rafeedie summary judgment on his due process claim. Rather, that Court remanded the case to this Court for further proceedings.[7]

On January 19, 1990, Rafeedie filed his first amended complaint for declaratory and injunctive relief (the "complaint").

### IV. LEGAL DISCUSSION

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reason-

---

7. In Defendants' May 4, 1992 submission, they again urge the Court to re-evaluate issues concerning jurisdiction, which issues had been addressed and determined on appeal. The Court will not, however, challenge the decision of the Court of Appeals for the District of Columbia Circuit in light of new precedent.

ably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513. At the same time, however, Rule 56 places a burden on the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In contrast, under Rule 12(c) of the Federal Rules of Civil Procedure ("Fed.R.Civ. P."), any party may move for judgment on the pleadings at any time "[a]fter the pleadings are closed but within such time as not to delay trial...." Judgment on the pleadings for the government is appropriate upon a showing that Rafeedie cannot prevail even if all the factual allegations in his Complaint are taken as true.

## A. DUE PROCESS CHALLENGE

As the Court of Appeals defined the due process inquiry:

> Rafeedie is in the unusual position of challenging a process not entirely before, and certainly not after, it has taken its course, but effectively in its midst. ... To the extent that the INS has, in some particulars, granted Rafeedie more than the statute requires, the district court should, in determining whether the Fifth Amendment has been satisfied, consider the processes that have actually been afforded him. As to the portion of the proceeding yet to come, however, Rafeedie's challenge is a facial one.

8. Although Rafeedie urges the Court also to decide the constitutionality of the statute as applied to all permanent resident aliens, plaintiff never before advanced such a claim. In fact, the complaint only alleges, "[T]he actions of defendants in initiating and conducting exclusion proceedings *against plaintiff* under 8 U.S.C. § 1225(c) deny *plaintiff* due process rights guaranteed to him by the Fifth Amendment to the

*Rafeedie II*, 880 F.2d at 524. Thus, this Court must examine the provisions as they have been applied to Rafeedie and on their face, as they could be applied to the plaintiff in the future.[8]

### 1. As Applied Challenge

In *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Supreme Court enumerated three factors that should inform a court's decision whether due process has been satisfied in a given case: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." The Court of Appeals detailed the factors this Court must consider in analyzing Rafeedie's "as applied" claim: the importance to Rafeedie of not being imprisoned and forced to leave the United States, the risk that he would erroneously be excluded, and the interest of the government in summarily excluding a terrorist and in avoiding the costs of additional safeguards.[9] *Rafeedie II*, 880 F.2d at 525.

It is clear that under the *Mathews* analysis, the summary exclusion provisions, as they have already been applied to Rafeedie, violate the due process clause of the Fifth Amendment. As a resident alien with significant legal and personal ties to this community, Rafeedie has a substantial stake that could be affected by official action. "[T]he result, after all, may be to separate him from family, friends, property, and career, and to remit him to starting a new life in a new land." *Rafeedie II*, 880 F.2d at

Constitution of the United States." Complaint, ¶ 38 (emphasis supplied). The Court will not, therefore, take this opportunity to address a claim that has not been put squarely before it.

9. A record bearing on these questions has been developed fully in the parties' renewed pleadings.

522. As the Supreme Court has described the weight of this interest, "[T]he right 'to stay and live and work in this land of freedom' [and] the right to [remain with one's] immediate family" are rights "that rank[ ] high among the interests of the individual." *Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982) (quoting *Bridges v. Wixon*, 326 U.S. 135, 154, 65 S.Ct. 1443, 1453, 89 L.Ed. 2103 (1945)).

The unique facts of this case underscore the magnitude of plaintiff's private interest. First, Rafeedie, who was employed as an assistant manager at a food market in Cleveland, Ohio and presumably has since moved to Houston, Texas without incident, has resided in the United States for nearly two decades. He was educated in the United States, and his wife and son, both United States citizens, and mother, a permanent resident, all reside here. In addition, plaintiff has four brothers, two sisters, and twenty-seven nieces and nephews who are United States citizens and reside in the United States.

The second factor in the balance, whether § 235(c) creates an erroneous deprivation of liberty and whether more procedural protections would reduce that risk, also weigh heavily in favor of plaintiff. Rafeedie has been given only one opportunity to submit information and argument on his own behalf, and even that opportunity has, thus far, been exercised in ignorance of the nature of the confidential information with which he has been charged. He has, in essence, been afforded virtually none of the procedural protections designed to minimize the risk that the government may err in excluding an alien. For example, by authorizing defendants to rely on undisclosed confidential information, the application of the statute has deprived him of any opportunity to confront the critical adverse evidence. And the result, therefore, might be

the pertinent informant's confidential evidence might turn out to be erroneous. The informant might have concocted his story for personal motives, such as revenge against the alien for, say, having an affair with the informant's spouse. And without an opportunity to confront this confidential evidence and cross-examine his accuser, the alien might have no means of exposing the informant's scheme. . . .

Memorandum of Points and Authorities in Support of Defendants' Motion for Judgment on the Pleadings ("Defs. Motion"), at 19.

The final factor the Court must consider when determining whether the statutory scheme has, thus far, provided plaintiff with sufficient due process is the government's interest in summarily excluding Rafeedie and in avoiding the cost of additional safeguards. Defendants contend that this interest overrides all other considerations because "this extraordinary case . . . involves the most compelling of government interests—the preservation of national security." Defendants' Memorandum in Reply to Opposition to Defendants' Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defendants' Reply"), at 8.

Plaintiff recognizes that the government has an interest in protecting the national security, and, at times, that security interest may be grave. However, the issue in this instant case is not whether the government has such an interest, but whether that interest is so all-encompassing that it requires that Rafeedie be denied virtually every fundamental feature of due process, as he has been thus far.

In any event, defendants' national security claims are particularly ill-fitting in this case in light of their treatment of permanent resident aliens for the last four decades and their treatment of plaintiff here. Until this litigation, the INS had not, for the previous 40 years, utilized summary exclusion procedures against permanent residents, and it, therefore, seems somewhat disingenuous for the INS to contend now that providing any additional safeguards beyond those specifically mandated in § 1225(c) would be unduly onerous or threatening to our nation's security. In addition, plaintiff has been paroled in the

United States since he applied for re-admission and has been permitted to move from his home in Ohio to Texas, thereby suggesting that defendants have at least implicitly determined that allowing plaintiff to remain free in the United States pending resolution of this litigation is in the public interest or, at the very least, not against the public interest.[10] And although the INS has repeatedly emphasized the confidential and classified nature of the charges against Rafeedie, the INS revealed for the first time, in Defendants' Opposition to Plaintiff's Motion for Summary Judgment—which motion was filed shortly after the onset of this litigation—part of that secret information, namely that Rafeedie is a high-ranking member of the PFLP, has been active in both fund raising and recruiting activities for the PFLP, and fought with the PFLP in Lebanon in 1982. *Rafeedie I*, 688 F.Supp. at 734.

Under these circumstances, the Court cannot conclude that the processes that have been afforded Rafeedie satisfy the basic and fundamental standard of due process. Plaintiff has been provided a single opportunity to present a written statement and has been subjected to a non-final determination of his eligibility for re-admission based on so-called confidential information, part of which was disclosed only after this litigation was initiated. Under the unique and troubling circumstances of this case, this permanent resident alien surely deserves more protections that the INS has thus far afforded him.

### 2. Facial Challenge

■ A facial challenge to a legislative Act is the most difficult challenge to mount successfully because the challenger "must show that 'no set of circumstances exists under which the Act would be valid.'" *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 110 S.Ct. 2972, 2980–81, 111 L.Ed.2d 405 (1990) (citing *Webster v. Reproductive Health Services*, 492 U.S. 490, 109 S.Ct. 3040, 3060, 106 L.Ed.2d 410 (1989) (O'Connor, J. concurring)). *See Rust v. Sullivan*, —— U.S. ——, 111 S.Ct. 1759,

1767, 114 L.Ed.2d 233 (1991). The fact that the Immigration and Nationality Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid since the Supreme Court has "not recognized an 'overbreadth' doctrine outside the limited context of the first amendment." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). *See Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 247–48, 108 S.Ct. 1780, 1791, 100 L.Ed.2d 265 (1988).

Defendants argue that the statute must withstand a facial challenge because, *inter alia*, the statute does not preclude the Attorney General (or his designee, in this case, the Regional Commissioner) from giving more process than is minimally required by the Act. Defendants' contention is persuasive.

Section 1225(c) indicates that the Attorney General "may in his discretion order such alien to be excluded and deported without any inquiry or further inquiry by a special inquiry officer." 8 U.S.C. § 1225(c). It nowhere provides, however, that the Attorney General cannot seek further inquiry. In fact, the regulations promulgated thereunder state, *inter alia:*

> If the regional commissioner is satisfied that the alien is inadmissible to the United States under paragraph (27), (28), or (29) of section 212(a) of the Act and if the regional commissioner, in the exercise of his discretion, concludes that such inadmissibility is based on information the disclosure of which would be prejudicial to the public interest, safety, or security, he may deny any hearing or further hearing by an immigration judge and order such alien excluded and deported, *or enter such other order in the case as he deems appropriate.* In any other case the regional commissioner may direct that ... the alien be given a *hearing or further hearing* before a special inquiry officer.

8 C.F.R. § 235.8(b) (emphasis supplied).

Although it may beg reality, the Court is not convinced that the government will fail

10. Even now, the INS has nowhere identified any new threats to national security that would

encourage defendants to revoke plaintiff's parole privileges.

to supply due process in the summary proceedings that are continuing. The government could, in fact, decide that Rafeedie is entitled to more extensive procedural protections, even in a summary proceeding, than he has been offered to date. *See FDIC v. Mallen*, 486 U.S. at 247, 108 S.Ct. at 1791. As Judge Silberman suggested when this case was first on appeal, "I would think the Attorney General has an obligation to provide Rafeedie that process which the Attorney General believes the Constitution requires.... Surely it cannot be suggested that the Attorney General is precluded from adding to subsection 235(c)'s vague specifications whatever he thinks is necessary to pass constitutional muster." *Rafeedie II*, 880 F.2d at 543 (Silberman, J. dissenting).

If the defendants choose to provide plaintiff with only the "vague specifications" articulated in § 1225(c), it may well be the case that Rafeedie could then successfully challenge the statute as it applies to him. It would appear that Rafeedie is entitled to those protections that had been afforded all permanent resident aliens for the forty years preceding the onset of this case and to those procedures under 8 U.S.C. § 1226 the INS initially was going to follow: a pre-exclusion hearing before an independent decisionmaker; the right to be represented by counsel and to be so apprised; a record of the proceedings; an opportunity to present evidence and cross examine witnesses; and a right of appeal. Nonetheless, "[a] statute such as this is not to be held unconstitutional simply because it may be applied in an arbitrary or unfair way in some hypothetical case not before the Court." *FDIC v. Mallen*, 486 U.S. at 247, 108 S.Ct. at 1791. Thus, the Court should not dictate the procedures the INS must follow and thereby "assume that the INS would not consult with the Attorney General or others in the Justice Department with expertise in constitutional law"

before completing the exclusion proceedings. *Rafeedie II*, 880 F.2d at 543 (Silberman, J. dissenting). The decision as to what process is due Rafeedie, in the first instance, is left to the INS, and the Court cannot conclude that the statute is infirm on its face under the Fifth Amendment.[11]

## B. FIRST AMENDMENT CHALLENGE

█ As a threshold matter, defendants urge the Court to find that resident aliens are not entitled to the same First Amendment protections as citizens and that the overbreadth doctrine does not apply to the regulation of aliens for exclusion or deportation purposes. The Court cannot agree.

Defendants rely principally on *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), for the proposition that the First Amendment will not invalidate "substantive immigration enactments ... unless they are shown to be wholly irrational." Memorandum in Reply to Opposition to Defendants' Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defs. Reply"), at 42. *Parker*, however, is inapposite, standing for the proposition that some speech that is constitutionally protected in civilian life is not constitutionally protected in military life because of "[t]he fundamental necessity for obedience, and the consequent necessity for imposition of discipline." *Id.* at 758, 94 S.Ct. at 2563. The argument advanced in *Parker* cannot be transferred to the deportation context.

The reasoning in *United States v. Robel*, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967), reinforces the conclusion that *Parker* is limited to the circumscribed military context and cannot be expanded to all situations in which the government asserts a countervailing national security interest. In *Robel*, the Court struck down as overbroad a section of the Subversive Activities

---

**11.** Plaintiff concedes that "this Court and the Court of Appeals have rejected Mr. Rafeedie's statutory construction argument" that § 1225(c) does not apply to aliens who are lawful permanent resident aliens but asks only that the Court refrain from entering final judgment on the issue until it has resolved plaintiff's due process challenge. Because the Court has addressed Rafeedie's claims under the due process clause and because it is now well-settled that Section 235(c) applies to permanent resident aliens, the government's motion for judgment on the pleadings as to Count One of the complaint shall be granted.

Control Act, which barred members of communist organizations from employment in United States defense facilities. The Court flatly rejected the argument that Congress' plenary powers in matters of national defense justified a departure from the overbreadth doctrine. As the Court explained:

> [T]his concept of 'national defense' cannot be deemed an end in itself, justifying any exercise of legislative power designed to promote such a goal. Implicit in the term 'national defense' is the notion of defending those values and ideals which set this Nation apart.... It would indeed be ironic if, in the name of national defense, we would sanction the subversion of one of those liberties—the freedom of association—which makes the defense of the Nation worthwhile.

*Id.* at 263–64, 88 S.Ct. at 424.

It has long been settled that aliens within the United States enjoy the protection of the First Amendment;[12] "once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders.... includ[ing] those protected by the First ... Amendment[ ] [which does not] acknowledge[ ] any distinction between citizens and permanent residents." *Bridges,* 326 U.S. at 161, 65 S.Ct. at 1455–56 (Murphy, J. concurring). No reason exists now to limit a permanent resident's rights. Plaintiff is entitled to the same First Amendment protections as United States citizens, including the limitations imposed by the overbreadth and vagueness doctrines.

### 1. Overbreadth

■ The overbreadth doctrine requires that statutes encompassing " 'a substantial amount of constitutionally protected conduct' " be struck down as violative of the First Amendment. *City of Houston v. Hill,* 482 U.S. 451, 458, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987) (quoting *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494,

102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)). As the Supreme Court articulated the rationale underlying the doctrine, "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963).

Section 1182(a)(28)(F) plainly reaches a substantial amount of expression protected by the First Amendment. Speech that advocates the use of force or of the violation of laws is constitutionally protected "except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969). Advocacy of a "philosophy of violence and disruption" is an insufficient ground on which to restrict First Amendment liberties. *Healy v. James,* 408 U.S. 169, 187, 92 S.Ct. 2338, 2349, 33 L.Ed.2d 266 (1972). By the same token, guilt by association alone is an impermissible basis upon which to deny First Amendment rights. *Id.* at 186, 92 S.Ct. at 2348.

Section 1182(a)(28)(F), however, permits the INS to exclude an alien if the alien "advocate[s] or teach[es]," or is a "member[ ] of or affiliated with any organization that advocates or teaches" one of several proscribed political doctrines, including overthrow of the government, assaulting government officers, destruction of property, and sabotage. By "advocate," Congress has indicated it means "advises, recommends, furthers by overt act, and admits belief in," including "[t]he giving, loaning or promising of support or of money or any other thing of value to be used for advocating any doctrine ... but nothing in this paragraph shall be construed as an exclusive definition of advocating." 8 U.S.C. §§ 1101(a)(2), 1101(e)(1). Although the government plainly may have a legitimate interest in regulating subversive conduct, it cannot broadly prohibit teaching or advocating unpopular tenets, or association with an organization that teaches or advo-

---

12. *See United States v. Verdugo–Urquidez,* 494 U.S. 259, 270–71, 110 S.Ct. 1056, 1063–64, 108 L.Ed.2d 222 (1990); *Kwong Hai Chew v. Cold-ing,* 344 U.S. 590, 596–97 n. 5, 73 S.Ct. 472, 477 n. 5, 97 L.Ed. 576 (1953); *Bridges,* 326 U.S. at 148, 65 S.Ct. at 1449.

cates such doctrines. *See Brandenburg,* 395 U.S. at 447, 89 S.Ct. at 1829; *Healy,* 408 U.S. at 187, 92 S.Ct. at 2349. The statute simply does not require that the threat of lawlessness be "imminent" or that the advocacy be "directed to" inciting lawless action and, therefore, does not distinguish between constitutionally permissible and impermissible activities.[13]

## 2. Void for Vagueness

■ The void-for-vagueness doctrine requires that if a statute's provisions are not clearly defined, they must be invalidated. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). The Supreme Court has explained in detail the rationale for and the values underlying the void-for-vagueness doctrine:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.... Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.... Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of (those) freedoms."

*Id.* at 108–09, 92 S.Ct. at 2298–99 (citations omitted).

The undefined terms of the statute—"activities," "prejudicial," "endanger"—are so broad and vague as to deny plaintiff a reasonable opportunity to know what he may or may not say or do. As President Truman noted in an analogous context: "[S]ome of these provisions would empower the Attorney General to deport any alien who has engaged or has had a purpose to engage in activities 'prejudicial to the public interest'.... No standards or definitions are provided to guide discretion in the exercise of powers so sweeping. To punish undefined 'activities' departs from traditional American insistence on established standards of guilt. To punish an undefined 'purpose' is thought control." President's Message to Congress Vetoing the Immigration and Nationality Act, 1952–53 Pub. Papers 441, 445 (June 25, 1952). Because 8 U.S.C. § 1182(a)(27) fails to convey a "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices,"[14] the Court must strike down the provision as an abridgement of the freedom of speech.[15]

## V. CONCLUSION

For the reasons expressed above, it is hereby

ORDERED that plaintiff's motion for summary judgment is granted in part and denied in part; it is

---

**13.** The same overbreadth analysis applies to 8 U.S.C. § 1182(a)(27), which permits defendants to exclude aliens on the basis of "activities" defendants believe "would be prejudicial to the public interest, or endanger the welfare, safety, or security of the United States." Consequently, that provision, too, must be struck down as unconstitutional under *Brandenburg* and its progeny.

**14.** *Jordan v. DeGeorge,* 341 U.S. 223, 231–32, 71 S.Ct. 703, 707–08, 95 L.Ed. 886 (1951).

**15.** In light of the rulings this date, the Court need not address plaintiff's additional challenges. For example, plaintiff charges in Count Three of his complaint that defendants' attempts to exclude him under 8 U.S.C. § 1182(a)(27) and (a)(28)(F) violate section 901(a) of the FRAA. When the complaint was filed, section 901(a) provided that "notwithstanding any other provision of law, no alien may be denied a visa or excluded from admission into the United States ... because of any past, current, or expected beliefs, statements, or associations which, if engaged in by a United States citizen in the United States, would be protected under the Constitution of the United States." However, on October 1, 1988, the President signed into law an appropriations act extending the benefits of section 901(a), but making those benefits available to nonimmigrant aliens only. *See* Section 555, Act of October 1, 1988, Pub.L. No. 100–461. By the same token, Rafeedie complains again in Count Five that defendants abridged his First Amendment rights and in Count Six that defendants acted in bad faith to deny him due process and equal protection of the laws. Four years after this action was initiated, Rafeedie has nowhere provided the Court with any evidence to suggest the defendants acted with a malicious intent, and the Court has already considered plaintiff's critical First Amendment challenges.

FURTHER ORDERED that defendants' motion for judgment on the pleadings is granted in part and denied in part; it is

FURTHER ORDERED that judgment shall be entered in favor of defendants as to Count One of the complaint; it is

FURTHER DECLARED that defendants' conduct of exclusion proceedings against plaintiff under 8 U.S.C. § 1225(c) have, thus far, violated the due process clause of the Fifth Amendment of the Constitution; it is

FURTHER DECLARED that 8 U.S.C. §§ 1182(a)(27) and (a)(28)(F) violate the First Amendment of the Constitution; it is

FURTHER ORDERED that Counts Three, Five, and Six are dismissed without prejudice; and it is

FURTHER ORDERED that this case stands dismissed.

IT IS SO ORDERED.